28

# JOHN B. RUSH et al v. LICK CREEK WATERSHED DISTRICT et al.—359 S. W. (2d) 582.

Eastern Section. May 10, 1962.

Certiorari Denied by Supreme Court September 7, 1962.

30

James N. Hardin, John A. Armstrong, Greeneville, for plaintiffs in error.

Milligan, Silvers & Coleman, Greeneville, for defendants in error.

COOPER, J. This proceeding originated in the County Court of Greene County, Tennessee when the Lick Creek Watershed District, a corporation duly organized and operating under the Watershed District Act of 1955 (T. C. A. sec. 70-1801 et seq.), filed a petition setting out a proposed "work plan" or "project" for the District. The purpose of the project was to reduce the annual flood damage in the watershed drained by Lick Creek by the construction of numerous earth dams, by channel improvement and by land treatment measures to decrease run-off, erosion and production of sediment. The defendants were the numerous landowners in the Lick Creek Watershed.

John B. Rush, et al., plaintiffs in error here, who will be affected by the project entered their appearance and objected to the proposed project.

After a hearing, the County Judge found the project economically feasible; that the estimated cost of $6,173,-082.00 was reasonable, considering the benefits to be derived, and that, since only a part of the land in the watershed would benefit, the cost (not borne by the Federal and State Governments) should be raised by special assessments.

The objectors sought to appeal to the Circuit Court of Greene County, but the appeal was denied unless the objectors executed and filed an appeal bond in the penalty of $246,293.28, representing 4% of the estimated cost of the project which the court held was required by Section 21 of the Act, T. C. A. sec. 70-1831.

The objectors thereupon filed their petition for certiorari in the Circuit Court of Greene County, which was granted upon the filing of a bond by objectors Rush, et al. in the amount of $250.00, and by objectors Graham, et al., in the sum of $500.00, both conditioned to pay damages and costs.

The case was heard at the March, 1960 term and, after a full hearing, a mistrial was entered because of the inability of the jury to agree.

At the June, 1960 term, the trial court entered an order dismissing the objectors' petition for certiorari on the ground that the objectors lost their right of review by failing to execute an appeal bond in an amount representing 4% of the estimated cost of the project. At the same time, the trial court ruled that under the evidence heard at the March term, the District had shown a proper exercise of Legislative power, and concluded that no possible injury resulted to objectors from the dismissal of the writs of certiorari because the Court "would be required upon proper motion to withdraw the issues from the jury and determine the same in favor of Lick Creek Watershed District, and accordingly does so determine the issues upon its own motion."

The objectors appealed, and this Court held that the action of the trial court was error, reversed the judgment, and remanded the cause for a jury trial.

On remand, the jury found in favor of the Watershed District after a lengthy trial, and a judgment was entered

"(a) That the proposed Plan, or Project is sound and economically feasible;"

"(b) That the probable cost of the Project is as set forth in the original petition, as amended, filed by the Lick Creek Watershed District;"

"(c) That the benefits to be derived from the proposed Project are as set forth in the original petition, as amended, of the Lick Creek Watershed District, and that such benefits are manifestly to the best interest of the lands affected;"

"(d) That the benefits will not be conferred generally upon all the lands of the District, but only upon the certain lands in the District described as to acreage, boundaries and ownership in the original petition of the Lick Creek Watershed District as amended, which descriptions are incorporated herein by reference;"

"(e) That the recommended method of financing the cost of the project to be borne locally is by special assessment against the lands benefited by the proposed improvement."

The objectors appealed, assigning numerous errors which will be hereinafter considered.

In assignments I, II, III, and V, it is urged on behalf of the objectors that (1) there was no material evidence to support the verdict; (2) that the verdict was contrary to the weight and preponderance of the evidence; and (3) that the verdict was contrary to law.

In considering these assignments of error on appeal, this court can not weigh the evidence, nor determine where the truth lies nor find the facts. Our review is limited in jury cases to a consideration of the evidence to determine if there is any material evidence to support the verdict, and in such review, we are required to take the strongest legitimate view of all the evidence favorable to the District, disregard all to the contrary, and indulge all reasonable inferences to uphold the verdict. Kunk v. Howell, 40 Tenn. App. 183, 289 S. W. (2d) 874, 73 A. L. R. (2d) 1304; Cherry v. Sampson, 34 Tenn. App. 29, 232 S. W. (2d) 610; Short Way Lines v. Thomas, 34 Tenn. App. 641, 241 S. W. (2d) 875.

Bearing these admonitions in mind, the record shows that the Lick Creek Watershed consists of approximately 168,000 acres of land, drained by Lick Creek and its tributaries. The flood level of the Watershed is 11.49 feet. The United States Geological Survey Lick Creek gauge at Mohawk has recorded water levels in excess of the flood level on 88 occasions since 1946, as follows:

| Year | No. of Times | Year | No. of Times |
|------|--------------|------|--------------|
| 1946 | 2 | 1954 | 4 |
| 1947 | 4 | 1955 | 6 |
| 1948 | 8 | 1956 | 10 |
| 1949 | 5 | 1957 | 6 |
| 1950 | 9 | 1958 | 5 |
| 1951 | 6 | 1959 | 7 |
| 1952 | 3 | 1960 | 4 |
| 1953 | 7 | 1961 | 2 (up until Oct. 2) |

These floods inundate approximately 15,225 acres of flood plain, with an estimated average annual floodwater

damage, including indirect damage, of $454,746.00. Of this damage, $310,265.00 is to crops and pastures, $18,406.00 to minor fixed improvements, $40,842 to roads and bridges, and indirect damages, viz. disruption of traffic, mail delivery and educational programs, loss of revenue by transportation services, delay and inconvenience to the traveling public, etc., of $75,791.00.

The planned works improvement of the Lick Creek Watershed consists of (1) land treatment measures to improve hydrologic cover conditions and to effect a decrease in runoff, erosion, and production of sediment; (2) the construction of 41 floodwater retarding structures (earth dams); and (3) channel improvement, by excavation, enlargement, and clearing debris and vegetation from the channel. These planned works of improvement will be installed over an eight-year period at an estimated total cost of $6,173,082.00. On completion, the project will reduce the land flooded annually by approximately 11,000 acres, with an estimated annual monetary saving of $304,715.00.

The Lick Creek Watershed District will bear none of the installation cost, except the cost of acquiring easements and rights of ways, and the costs of administering the plan. This cost, including interest on the money to be borrowed to pay such costs, is estimated to be $600,-000.00. $4,488,819 of the total estimated installation cost of the project will be borne by the U. S. Soil Conservation Service under the authority of the Watershed Protection and Flood Prevention Act (P.L. 566, 83rd Congress, 68 Stat. 666), as amended by the Act of August 7, 1956 (P.L. 1018, 84th Congress; 70 Stat. 1088), 16 U. S. C. A. sec. 1001 et seq., and $1,684,263 will be borne

by assistance under other federal laws and from measures taken by the individual farmers in the District, who have or will agree to take part in soil conservation measures.

The total average annual cost to the Lick Creek Watershed District for the first 20 years of operation, during which time the $600,000 will be amortized, will be $45,-000.00. This money is to be raised by assessments against lands benefited from the works improvement. It is expected that the annual assessment will approximate $4.00 per acre; however, the exact figure will have to be determined by commissioners appointed and operating under, and in conformance with, the provisions of T. C. A. sec. 70-1801 et seq.

The overall ''benefit-cost'' ratio is 1.6:1.0. The local ''benefit-cost'' ratio is 7:1, with a local ''benefit-cost'' ratio of 23:1 after 20 years.

The record further shows that the detailed plans of the works improvement have been approved by the Soil Conservation Service of the United States Department of Agriculture, and by the requisite committees of the House of Representatives and of the Senate of the United States.

■ Considering the above evidence, we are of the opinion that the jury could reasonably find each of the issues, set out in the judgment above, in favor of the Watershed District. Accordingly Assignments I, II, III, and V are overruled.

Assignments IV and VI through XVII are directed to alleged errors in the charge given by the trial court.

In Assignments IV and VI the objectors insist that the trial court erred in failing to instruct the jury to return a separate and distinct verdict on each of the issues set forth in T. C. A. sec. 70-1831, and included in the judgment above.

The record shows that the parties agreed that there were 5 issues to be decided by the jury and tendered these issues to the Court on February 25, 1960, before the first jury trial in this cause. At the close of the proof and prior to argument of counsel, the court and counsel discussed the submission of the issues to the jury, as follows:

"THE COURT: Now gentlemen the court is going to submit to the jury all of these issues as set forth in I believe Title 70, Section 1831 of the Code of Tennessee Annotated. I am going to instruct the jury that they will either find in favor of the watershed or against the watershed. Now, those are the issues, are they not.

"ATTORNEY SILVERS: Yes.

"THE COURT: Let the record so show, in other words I am going to instruct them as to the issues and then let them determine.

"ATTORNEY ARMSTRONG: Your Honor will instruct them as to the issues but they need not specify each one in particular when they return a verdict yes or no.

"THE COURT: Oh, no, no it will be a general verdict."

No objection to this procedure was made by either party, nor was there any request that the court instruct the jury to render a special verdict on each issue.

We are of the opinion that the above colloquy discloses that the parties fully understood, and were in agreement, that the court would instruct the jury to determine the five issues, and then return a general verdict either for or against the Watershed District. However, if our interpretation of the colloquy is incorrect, we are still of the opinion that the trial court did not err in failing to instruct the jury to return separate verdicts on each issue.

T. C. A. sec. 20-1316 provides:

"The trial judge, *in his discretion*, especially where the questions for solution are several or involved, may direct and supervise the formulation of special issue or issues of fact for submission to and answer by the jury. The response or responses of the jury shall have the force of other verdicts at law." (emphasis added).

The trial court considered the manner in which the issues were to be submitted to the jury as shown by the above colloquy, and, after a consideration of the record and issues, we can not say that he abused his discretion in instructing the jury to return a general verdict.

Accordingly, Assignments IV and VI are overruled.

The objectors further charge in Assignment VII that the court erred in failing to submit the issue relative to the method of financing in the exact language of T. C. A. sec. 70-1831(e).

■ "It is an established rule in this state that it is the duty of counsel by suggestion or special request to bring to the attention of the trial judge any amplification of his charge, or if the language be equivocal to ask for removal of the doubt by proper instructions." Management Services, Inc. v. Hellman, 40 Tenn. App. 127, 289 S. W. (2d) 711, and cases there cited. Where counsel engaged in the trial fails to do so, "this court will not reverse unless convinced that the party complaining was prejudiced by such instruction, or that justice is about to miscarry." Carney v. Cook, 158 Tenn. 333, 13 S. W. (2d) 322, 325.

■ In the present case there was no suggestion by counsel for the objectors that the court's charge needed to be clarified or amplified, and this Court is not convinced that the objectors were prejudiced in any manner by the instruction as given.

Assignment VII is overruled.

■ In Assignments VIII and IX, the objectors contend that the trial court erred in charging the jury as follows:

"Gentlemen of the jury, under the provisions of Chapter 112 of the acts of 1955, your Tennessee Legislature enacted that law *to grant to certain localities that were in distress or needed or thought they needed watershed districts, gave them the power and the authority to set them up.*"

"Now, the watershed corporation is duly organized and existing. Mr. Wisecarver testified that he was the president of the watershed corporation. Under the Act provided here, it is a non-profitable cor-

poration. *It functions solely and alone for the benefit of the people in the watershed district."*

It is the insistence of the objectors that the portions of the charge we have italicized "were erroneous, and that it improperly influenced the jury against the objectors."

We are of the opinion that this charge, when considered in context, was not erroneous even though it was not necessary to a decision of the issues raised by the evidence and pleadings. It was conceded by the parties that the Watershed District was properly organized and functioning. It was the Works Improvement Project, not the creation or the function of the District, which was in issue.

■ The portion of the charge quoted above was introductory to the main portion of the court's charge and was made in an effort to illustrate to the jury that the Watershed District was a quasi-public corporation created by statutory authority, and we are of the opinion that the jury could not have misunderstood its purpose when considered in context. If, however, there was a chance that the jury could have misunderstood this portion of the charge, it was the duty of counsel for the objectors to call it to the attention of the Court. Management Services, Inc. v. Hellman, supra. As this was not done, and as this Court is not convinced that the inclusion of the above quoted portion of the charge prejudiced the cause of the objectors or that justice is about to miscarry, the assignment is overruled.

Assignments X and XI are directed at the following portion of the court's charge:

"Now, this corporation works through its President, its Board of Directors and its agents and its servants. That's the only way a corporate entity can carry on its business, so the corporation as a corporation, as a legal entity, has caused a survey to be made as to the feasibility of this plan and so forth in the County Court of your county and the County Court found the issues to be feasible and economical and so forth and adopted a plan."

"Now then, this suit was, it stands here as same as it had been appealed by the defendants, Mr. Rush and others and Mr. Graham and others, to contest the right to establish the Watershed District, and I will tell you the issues in this case later on in this charge, and those will be the issues that you twelve men, as jurors will determine from the evidence and the evidence alone in the case."

■ Again, this is an introductory portion of the charge that would have been better deleted. However, the whole tenor of the charge was that the jury was to decide the issues on the evidence introduced in the trial of the case and were to consider nothing else. It is inconceivable to us to think that the jury would not follow the tenor of the instruction which continually tells them to consider only the evidence introduced in the trial of this cause in deciding if the Watershed District had carried the burden of proof on the 5 issues to be decided, but was influenced by the "off-hand" reference to the fact that "the County Court found the issues to be feasible and economical and so forth."

We are of the opinion, therefore, that at most the instruction was harmless error (T. C. A. sec. 27-117).

In Assignment XII, the objectors insist that the Court charged the jury that "they were bound by expert testimony in determining whether or not the valley needs to be drained", and that this was error.

■■■ The portion of the charge to which exception is taken is as follows:

"So gentlemen, you will look to the expert testimony to determine whether or not this valley needs to be drained and whether or not the evidence as shown makes a case that you gentlemen should go along and say that these issues are in favor of the Watershed or against the Watershed, and so it becomes finally a question for you twelve men to determine from all of the evidence in the case, and by a preponderance of the evidence in the case."

In the portion of the charge immediately preceding the above quoted portion, the trial court instructed the jury in accordance with, and in the language of, Drainage Dist. No. 4, etc. v. Askew, 140 Tenn. 314, 323, 204 S. W. 984, 986, that

"It does not require expert testimony to describe a tract of land, a watershed, or to say whether a given parcel of land is too wet for profitable cultivation and will be benefitted by a drain or ditch. Whether the improvement district will be to the public welfare or public utility is dependent upon questions which may well be determined by the evidence of laymen, and therefore the layman is competent to give his opinion upon the ultimate fact to be determined."

Considering the above quoted portions of the charge together, it is evident that the court did not instruct the jury to consider only expert testimony "in determining whether or not the valley needs to be drained", but told the jury to consider expert testimony along with the lay testimony—in short, to consider all the evidence in the case. This assignment is overruled.

In Assignment XVII, the objectors urge that the court erred (1) in failing to charge the special request No. 1 of the objectors relative to the weight to be given to expert testimony, and (2) in giving a charge, in response to the special request, which did not properly define the weight to be given to expert testimony, but placed too much importance on it.

In the case of Henderson v. United States, 6 Cir., 218 F. (2d) 14, 18, 50 A. L. R. (2d) 754, it is stated:

"The trial judge is not required to instruct the jury in the exact language requested by one of the parties. It is part of the judicial office to decide upon the style and form in which to explain the applicable law to the jury. If the substance of the requested instruction is involved in the case and is correctly explained to the jury, it is not necessary to express it in the categorical form which counsel has selected."

We have carefully considered the charge on expert testimony given by the trial court as the result of the objectors' request and are of the opinion that the charge adequately and correctly covered the issue, and was not misleading in any respect.

Assignment XVII is overruled.

 In Assignment XIII, the objectors insist that the trial judge erred in his charge to the jury by making reference to certain sections of Tennessee Code Annotated without reading or explaining the sections to the jury.

As pointed out in the brief of counsel for the Watershed District, "An examination of the portion of the Court's charge in which the allegedly objectionable sections are found will show that the Court was simply giving a brief historical analysis of legal circumstances which led to the instant litigation. Nothing in the Court's language could have caused the jury to believe that their decision on the specific issues before them should be, in any way, influenced by factors other than the evidence presented. Clearly the recitation of Code numbers without further explanation could not give the jury any assistance; equally clearly it could not mislead them."

"Section 70-1829 T. C. A. was explained by the Court only to the extent necessary to show that it was under this Section that the original petition had been filed. If there was an ambiguity in the Court's explanation, it would not have misled the jury. Immediately after the explanation of T. C. A. 70-1829, the Court pointed out from the outset of the filing of the petition, the statutory issues needed to be decided."

This assignment is overruled.

 In assignments XIV and XV, it is insisted that the court erred (1) "in charging the Federal statutes as they had not been offered in evidence during the trial, and had no bearing upon the issues which the jury was to determine"; and (2) in "making reference or inference by innuendo or otherwise, to Federal funds having

been approved or provided, this not being pertinent to the issues and there should have been on reference to same.''

The federal statute included in the Court's charge was the ''Watershed Protection and Flood Prevention Act, Volume 16, United States Code Annotated, Section 1001, commonly referred to as Public Law 566.

The record in this cause reveals that the original petition and work plan of the Watershed District set out in detail the estimated installation cost of the Works Improvement project, which is the subject of this suit. Evidence was introduced by the Watershed District that the Project had been approved by the Soil Conservation Service of the United States Department of Agriculture, and by the requisite committees of the House of Representatives and of the Senate of the United States, and that approximately 4½ million dollars, representing 65.2% of the total project cost, would be available to the Watershed District under Public Law 566, as amended.

We are of the opinion, therefore, that a consideration of Public Law 566, as amended, was justified by the pleadings and evidence, and was necessary in order for the jury to have a correct and sufficient guide.

 It is true, as insisted by counsel for the objectors, that ''No Federal statutes were introduced during the trial.'' However, that is no longer a necessary requirement. T. C. A. secs. 24-607 and 24-608 expressly provide that

''Every court of this state shall take judicial notice of the common law and the statutes of every state, territory and other jurisdiction of the United States.

"The court may inform itself of such laws in such manner as it may deem proper, * * *."

As to the insistence that the court erred in charging "any amendment of the Federal law after the first filing of the proceeding in the county court", the issue was the applicability of P.L. 566 to the financing of the Works Improvement Project at the time the jury was determining the feasibility of the project. This being true, the Court had to charge the law as it was then in existence, not, as insisted by the plaintiff, as it was some two years before.

These assignments are overruled.

Assignment XVI is directed at the courts charging T. C. A. sec. 70-752, which is a part of the Drainage and Levee District Act.

The trial court was in error in charging this statute; however, the error was not prejudicial as the Watershed District Act, under which the present case was instituted, has the same provision. See T. C. A. sec. 70-1818, subd. K.

Accordingly, this assignment is overruled.

In Assignment XXI, the objectors insist that the court erred "in permitting the jury to consider the work plan as evidence because it had been prepared so long before the hearing that it had no probative effect."

The record shows that the parties agreed "that all exhibits introduced by either side on the previous trial of this case may be re-introduced in the present case and when so re-introduced may be regarded as being in evidence", and that the work plan was introduced in the previous trial.

Further, the record shows that all parties to this cause introduced testimony relative to changes in construction costs since the work plan was completed, which would, of necessity, bring the work plan up-to-date.

Consequently, this assignment is found to be without merit.

In Assignments XVIII, XIX and XX, the objectors insist that the court erred (1) in admitting testimony of the economists Abe Hart, Jr. and William E. Hall relative to an economic survey they made of the Lick Creek Area, and which was included in the work plan; (2) in admitting exhibits showing alleged benefits to various sections of the Watershed District, as prepared by the economists and as included in the work plan; and (3) in permitting Jesse Livingston, an engineer for the Soil Conservation Service, to testify relative to conditions in the Lick Creek Valley in the past, and the problematical effect on the lands in the watershed should the project be constructed, which, likewise, were included in the work plan. The objectors insist that the testimony and exhibits were based on hearsay, were conjectural, and were highly prejudicial to the objectors.

As pointed out above, the parties stipulated that the work plan could be admitted into evidence. But aside from the stipulation, we have read the testimony of the witnesses in question, have considered their official sources of information, their training and experience, and have come to the conclusion that the evidence is not hearsay, and is not conjectural.

These assignments are therefore overruled.

Having overruled all assignments of error, the judgment of the trial court is affirmed. Costs of the appeal will be paid by the objectors and their sureties.

McAmis, P. J., and Hale, J., concur.