STATE of Tennessee ex rel. DEPARTMENT OF TRANSPORTATION, BUREAU OF HIGHWAYS, Robert F. Smith, Commissioner, Plaintiff-Appellant,

v.

Joe B. BREVARD et ux., et al., Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

March 26, 1976.

Certiorari Denied by Supreme Court June 7, 1976.

R. A. Ashley, Atty. Gen., State of Tennessee, Clark H. Tidwell, Taylor, Schlater, Lassiter & Tidwell [Special Counsel], Nashville, for plaintiff-appellant.

Robert H. Jennings, Jr., West, Jennings & Allen, Nashville, for defendants-appellees.

## OPINION

SHRIVER, Judge.

Condemnation proceedings were filed by the State of Tennessee through the Commissioner of Transportation against the landowner defendants to acquire certain real estate for highway purposes. The landowners did not contest the right to acquire the partial taking of their property but excepted to the amount deposited by the State. When the case came on to be tried to a jury on the issues of the amount of compensation to be paid the owners for the taking, the jury brought in a verdict and an award of $55,000.00 for the land and improvements taken and incidental damages to the remainder of the property. This verdict was made the judgment of the Court and, after the motion for a new trial was overruled, the State prayed and was granted an appeal to this Court and has assigned errors.

## The Facts

The pertinent facts, which are not in dispute, may be summarized as follows:

The State condemned 6,103 square feet of a parcel of land belonging to the defendants, leaving 5,597 square feet remaining. Said land was taken for the purpose of widening Douglas Street from the Madison Square Shopping Center to Old Hickory Boulevard in Nashville, Davidson County, Tennessee. The date of taking was September 24, 1974. The property was improved with a one and one-half story house to which an addition had been built wherein a beauty shop was operated and within the house itself there were two apartments which were rented.

While the neighborhood, including the subject property, was zoned Commercial "B", the general area consisted of both commercial and residential property which had not been converted to full commercial use.

The testimony as to the value of the land taken and the incidental damages is as follows:

Mr. and Mrs. Brevard, the landowners, testified that the fair market value of the land before taking was $75,000.00 which included the improvements thereon. They attributed $45,000.00 to the building and improvements and $30,000.00 to the land itself. Mr. Brevard expressed the opinion that the land was worth $2.30 per square foot and that the remainder was damaged fifty percent because of the reduction in its size, and his estimate, or opinion, was that the remainder would be worth only $7,000.00 after the taking.

Appraiser Steve Harrison was qualified as an expert witness for the landowner. It was his opinion that the value of the land taken was $36,252.00 and that the improvements taken had a value of $41,747.00, for a total of $78,000.00.

Mr. Harrison used a replacement cost approach, less depreciation, in his evaluation of the improvements. He agreed that the remainder after the taking was damaged fifty percent and, taking into account all of these elements, he summarized by stating that, in his opinion, the landowners were entitled to recover $61,789.00.

The State moved to strike the testimony of Mr. Harrison after he testified as to the way he appraised the subject property and the manner in which he considered comparable sales in the neighborhood. This motion was overruled, the Court stating that it was not timely made.

Appraiser Norman Hall testified as an expert witness for the State. He valued the land taken at $10,070.00 and the value of the improvements taken at $17,400.00, for a total of $27,470.00, plus incidental damages of $2,060.00, for a grand total award to the landowners of $29,530.00.

Appraiser William Mercer testified as an expert witness for the State and he valued the land taken at $9,155.00 and the improvements taken at $23,667.00, and arrived at an amount due the landowners of $32,824.00, and, in his opinion, the landowners suffered no incidental damages to the remainder.

## The Issues

Counsel for appellant, in their statement under Rule 12, state:

"This appeal raises two issues:

(1) Whether or not the Trial Judge erred in charging the jury on the 'Before and After Rule' of valuation, and

(2) Whether or not the Trial Judge erred in not striking the expert testimony of a real estate appraiser who repudiated the willing buyer-willing seller test on cross-examination even though he had affirmed the fair market value rule on direct examination."

## Assignments of Error

There are three assignments of error, as follows:

"I. The Trial Court erred in charging the jury that the landowners could be compensated on a before and after value based upon the particular value of the property to the landowner.

II. The Trial Court erred in its charge to the jury that the difference in the value of the whole tract before the taking and the value of the remainder after the taking is the fair measure of compensation due the owner when:

(1) In Tennessee the measure of compensation is the fair cash market value of the property or property rights actually taken, plus incidental damages, if any, to the residue of the tract; and

(2) The amounts awarded for the value of the land taken and for the incidental damages to the remainder should be reported separately by the jury.

III. The Trial Court erred in not striking the testimony of the expert appraisal witness Steve Harrison who admitted on cross-examination that he gave additional value to the subject property because the landowners did not wish to sell it, the State had to have the property and the transaction is not conducted on an arms-length basis, notwithstanding his affirmation to a hypothetical question on direct-examination of the fair market value test."

In their brief and argument counsel for the State make the following assertion:

"The first two assignments of error deal with the contention of the State that the Trial Judge improperly charged the jury. Both assignments complain of the apparent adoption of the Trial Court of the 'Before and After Rule' which is the difference between the fair market value of the whole tract before the taking and the fair market value of what remains after the taking. See 4A NICHOLS on EMINENT DOMAIN § 14.232.

With respect to the first assignment of error, the State respectfully insists that the charge of the Trial Judge permitted the jury to consider the subject property for its special use to the owner, the objectionable part being as follows:

'While fair cash market value means market value, property in actual use by the owner on the date of taking, may possess a particular value to him, which would be sacrificed if the property were placed on the general market. The law does not require this sacrifice. Just compensation requires that the property be paid for at the place and in the form in which it was taken.'"

Counsel for the appellant correctly state that it has long been held in Tennessee that all the capabilities of property and all the available uses to which it may be applied are to be considered, and not merely the condition that it was in at the time and the use to which it was then applied by the landowner. Counsel state: "It is not a question of value of the property to the owner," which is not completely accurate. It would be correct to say that the question of value of the property to the owner is only one element to be taken into account in determining the fair cash market value. Counsel cite *Alloway v. City of Nashville,* 88 Tenn. 510, 13 S.W. 123 (1890), and *Davidson County Board of Education v. First American National Bank,* 202 Tenn. 9, 301 S.W.2d 905 (1957).

*Alloway v. City of Nashville,* supra, is a landmark decision which has been cited and quoted numerous times in more recent decisions of the Courts of this State. The well known rule is laid down in *Alloway* to the effect that just compensation required by our Constitution and laws for lands taken for public use consists of the fair market value, in cash, of the lands actually taken, at the date of their appropriation, estimated as if the owner were willing to sell and the taker desired to purchase that particular quantity of land at that place and in that form, together with such incidental damages as a result, naturally and proximately,

to other lands of the same landowner at the date of the taking.

The Court then states as follows:

"The inquiry as to fair market value, in cash, of the land actually taken must be restricted, both in the evidence and in the Court's charge to the jury, to the general value of the land, estimated upon *consideration in a single view of all its elements of value. . . .* Such elements of value must not be priced separately, but the land, with all its qualities and capabilities, must be taken and valued as one whole." [Emphasis supplied]

In *Davidson County Board of Education v. First American Bank,* 202 Tenn. 9, 301 S.W.2d 905 (1957), the Court refers to and quotes with approval from *Alloway v. City of Nashville,* supra, concerning fair market value of property taken, stating that the Trial Judge had correctly instructed the jury to take into consideration the capabilities of the property and its uses and those to which it may be best suited and every other element of value which has been proved by a preponderance of the evidence.

Quoting from a Massachusetts case, the opinion in *Davidson County Board of Education v. First American Bank* said:

"The sum to be awarded for real estate taken is the fair market value of the property, having reference to all the uses to which it is adapted. Its value for any special purpose is not the test, although it may be considered, with a view of ascertaining what the property is worth in the market for any use for which it would bring the most." [p. 15, 301 S.W.2d p. 907]

Further, then quoting from Orgel on Valuation, page 146, the Opinion states:

"The courts are unanimous in admitting testimony on the adaptability of property for this use and for that, save for the familiar restrictions against the consideration of highly 'remote and speculative' contingencies."

As bearing directly on the questions raised by the first and second assignments, the Opinion of the Supreme Court of Ten-

nessee in *Southern Railway Co. v. City of Memphis,* 126 Tenn. 267, 148 S.W. 662 (1912), is of particular interest. This is a condemnation case that has been widely cited and quoted in more recent decisions of our Courts and, as far as our research has indicated, it has not been overruled or departed from in the holdings to which we refer herein. In the course of the Opinion (pps. 296–97, 148 S.W. p. 669), the Court said:

> "So the railway company is entitled to be compensated not only for the value of the land taken as land, but, in addition, the value of the land taken in connection with the uses to which the owner is devoting it. If the taking of its switch-yards destroy the function of the railway company in the city of Memphis as a common carrier of freight, it is entitled to be compensated for the full value of the use of its terminals to its entire system of road. If it do not destroy, but merely permanently impair it, it is entitled to fair compensation for the degree of impairment, which its system of road suffers from the taking."

The part of the Judge's charge in the case at bar which is complained of in Assignment No. 1 is quoted in the brief and argument of counsel, as follows:

> "While fair cash market value means market value, property in actual use by the owner on the date of taking, may possess a particular value to him, which would be sacrificed if the property were placed on the general market. The law does not require this sacrifice. Just compensation requires that the property be paid for at the place and in the form in which it was taken."

It is interesting to note that in *Railroad v. Memphis,* supra, the Court, 126 Tenn. at page 297, 148 S.W. at page 669, has this to say:

> " . . . The true rule is the fair cash value of the property taken at the place and in the form at which it is taken, having in view its value for the uses to which it is being devoted by the owner at the time of the taking, together with all

other elements of value of which it is capable. A citizen whose property is taken for public use is not required to sacrifice any part of the actual and permanent present value of his property. Just compensation forbids this.

> By fair cash value is generally meant the market value; but if the property is in actual use by the owner in such way that it possesses a peculiar value to him which would be sacrificed if placed upon the general market, he is entitled to this value, and just compensation requires that he shall be paid for it."

Reading the numerous Tennessee decisions involving the question posed by Assignments 1 and 2 herein, it seems to us that the rule as to any special or peculiar value which the property has to its owner requires that such special or peculiar value be taken into consideration by the Court and the jury in arriving at an award to the owner in a condemnation case. While the value to the owner may be enhanced by its special usefulness, benefit or profit to him, this is only one element for consideration. It must be remembered that the peculiar value of the property to the owner as presently used may not continue indefinitely since it may become necessary or desirable to change the use or sell the property, in which event its value for other uses and to other people would become a material factor for consideration.

We think a reasonable and fair interpretation of the charge to the jury is that the Court instructed the jury to determine the value of the property taken, adding the amount of incidental damage done to the residue, if any, after deducting from said incidental damage to the residue the value of all special benefits, if any. It is to be noted that the Trial Judge quoted in his charge the entire statute, being Section 23–1537, T.C.A.

We do not interpret the charge as being an instruction to the jury to use the Before and After Rule. He used the language in the context that the property owner should neither be richer or poorer after the taking of his property.

It is asserted in the brief of defendant and the record shows that counsel for the State did not object to the language used by the Court in the charge at the conclusion of the charge and did not offer any special request to correct same. Under our authorities we might be justified in overruling the assignment on this ground. As was said in *Rush v. Lick Creek Watershed Dist. et al.,* 50 Tenn.App. 28, 359 S.W.2d 582 (1962), if the charge was capable of being misunderstood by the jury, it was counsel's duty to call it to the attention of the Court. *Also see Cohen v. Cook,* 224 Tenn. 729, 462 S.W.2d 499 (1969).

It is also argued by counsel for defendant that the motion for a new trial made by the State did not assert as a ground the alleged error in the Judge's charge. As to this question, we think the motion for a new trial was sufficiently specific to call the Court's attention to the error complained of in the charge.

Considering the charge as a whole in the case at bar, we are of opinion that the jury was not mislead as to the method of arriving at the fair cash market value of defendant's property and that there was no reversible error in the charge. Hence, Assignments 1 and 2 are overruled.

Assignment No. 3 charges error in the refusal of the Trial Judge to strike the testimony of expert witness Steve Harrison because of some statements made by him on cross-examination which counsel interprets as saying that he gave additional value to the subject property because the landowners did not wish to sell and that it was not an arms-length transaction.

This witness stated that the comparable sales used by him were arms-length sales with a willing buyer and a willing seller and that they were for the value of the land itself and not the improvements. After he had undertaken to make some explanation about the comparable sales and that he didn't consider the taking of defendant's land as an arms-length transaction, he was asked and answered:

"A.  I appraised it as of the fair market value as of the date of taking. The value that I put on it, in my opinion, is what a willing buyer would pay for this property, and what I think a willing seller would accept, which would be Mr. and Mrs. Brevard, which was not the case.

Q.  But you, as an appraiser, have to make that assumption, don't you?

A.  Yes, sir.

Q.  Because that's how the Judge charges the jury, that they have to find the fair cash market value of this property.

A.  That's right.

Q.  And they have to assume a hypothetical willing buyer and a hypothetical willing seller?

A.  That's how I appraised it."

We are satisfied that the Trial Judge did not abuse his discretion in refusing to strike the testimony of this witness.

As to value, the expert witness may express his opinion and then state the basis on which he arrived at that opinion, but the answers given to the questions on cross-examination may be looked to by the Court and the jury in evaluating the opinion expressed by the witness. As to whether its value is increased or diminished is a matter for the jury to decide and, generally speaking, an expert witness is not disqualified to testify merely because he may have used some criteria in arriving at his opinion which is not altogether the standard among appraisers.

In *Jones on Evidence,* Section 392, page 493, it is said:

"While it is true that the jury are not bound to accept the opinion of experts and are not concluded by them, yet such opinions are entitled to be considered and to receive such weight as in the view of all circumstances reasonably belongs to them."

Our cases generally hold that the value of expert testimony is for the jury and that the Trial Judge has a wide discretion in passing upon the admissibility of expert testimony as to value. *Insurance*

*Co. v. Smith,* 18 Tenn.App. 222, 74 S.W.2d 1078.

Also see *State v. Rascoe,* 181 Tenn. 43, 176 S.W.2d 392, wherein the opinion in *Turnpike Co. v. Creveling,* 159 Tenn. 147, 17 S.W.2d 22, is quoted as saying:

"An exception to the admission or exclusion of evidence in a land damage case will ordinarily not be sustained, except in the case of manifest error."

Assignment No. 3 is overruled.

For all of the reasons set forth hereinabove, all assignments are overruled and the judgment of the Trial Court is affirmed.

AFFIRMED.

TODD, J., and PURYEAR, Special Judge, concur.