# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 19, 2008 Session

## ELLER MEDIA COMPANY v. CITY OF MEMPHIS, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-002132-01    Donna M. Fields, Judge

---

### No. W2007-02751-COA-R3-CV - Filed December 22, 2008

---

This appeal concerns the value of property taken by the City of Memphis under its eminent domain power. The condemned land was subject to a leasehold interest held by the Appellant. The Appellant used the land as a site for a billboard, which it rented to advertisers. After taking possession of the land, the City compensated the owner, but not the Appellant. Appellant sought compensation for its property interest, and designated an expert witness to offer proof on its value. The City objected to the expert's methodology, and asked the trial court to exclude his testimony. After an evidentiary hearing, the trial court ruled that the expert's methodology was prohibited by this Court's decision in *State ex rel. Comm'r v. Teasley*, 913 S.W.2d 175 (Tenn. Ct. App. 1995). Without the expert's testimony, Appellant could not present proof on the value of its property interest and accordingly, the trial court entered a judgment for the City. Finding that the trial court erred when excluding Appellant's expert, we reverse.

### Tenn. R. App. P.3; Appeal as of Right; Judgment of the Circuit Court Reversed

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Mark D. Herbert, Jackson, MS, for Appellant
Lisa A. Reppeto, Jackson, MS, for Appellant
E. Patrick Lancaster, Jackson, MS, for Appellant

Oscar C. Carr, III, Memphis, TN, for Appellee
Sara L. Hall, Memphis, TN, for Appellee

Lawrence P. Leibowitz, Knoxville, TN, Amicus Curiae
Jennifer L. Knapp, Knoxville, TN, Amicus Curiae

**OPINION**

This appeal concerns the admissibility of expert testimony in an eminent domain action. The underlying dispute is between the City of Memphis ("City") and Eller Media Company ("Eller") over the value of Eller's interest in a tract of land taken by the City.

In 1980, Naegele Outdoor purchased a small parcel of land in Memphis, Tennessee, and placed an outdoor advertising structure, or billboard, on the land for advertisers to rent. In 1995, Tanner Investment Company, LLC ("Tanner") purchased both the land and the billboard. In 1996, Universal Outdoor purchased the billboard and entered into a lease of the property with Tanner for an initial term of one year with forty one-year automatic renewal options. In May 1998, Eller acquired Universal Outdoor, and became owner of both the billboard and the leasehold interest. The land has been used exclusively as a site for outdoor advertising since the 1980s.

On April 4, 2001, the City filed a Petition for Condemnation in Shelby County Circuit Court. The City took possession of the land on April 27, 2001, after depositing $127,000 as compensation for the taking. Subsequently, the City and Tanner, the owner of the underlying property, submitted an Agreed Order directing the Circuit Court Clerk to disburse the deposited money to Tanner. On May 30, 2001, Eller filed its Answer, alleging, in part, that $127,000 was insufficient compensation for its property interest. Having already received compensation, Tanner is no longer involved in the litigation.

Prior to trial, Eller designated Dr. Rodolfo Aguilar as an expert witness. At Eller's request, Dr. Aguilar appraised the value of Eller's interest in the condemned property. Following Dr. Aguilar's appraisal, Eller's second expert, Walter Allen, completed a consolidated appraisal valuing both Eller's leasehold interest and the total unencumbered fee interest. The City filed a Motion in Limine to exclude both experts. In its Motion, the City contended that the appraisal methodology used by Dr. Aguilar was prohibited under Tennessee law.

On October 8, 2007, the trial court held a hearing to determine the admissibility of Eller's experts. At the hearing, Dr. Aguilar described his credentials and methodology, and Eller presented both Dr. Aguilar's appraisal report and Mr. Allen's consolidated report. In his appraisal, Dr. Aguilar considered revenue that Eller would have received as rent from advertisers during the remaining lease term. After hearing argument and examining the appraisal, the trial court granted the City's Motion to exclude Dr. Aguilar's testimony. The trial court also excluded Mr. Allen's appraisal, to the extent that it relied on Dr. Aguilar's methodology. In so ruling, the trial court specifically found that Dr. Aguilar's credentials and his knowledge of the methodology were satisfactory. However, the trial court found that Dr. Aguilar failed to consider Eller's billboard (the structure itself) as personal property. Furthermore, the trial court decided that Eller, through Dr. Aguilar's appraisal, improperly sought compensation for lost business income. This rationale was based on the trial court's view that *State ex rel. Comm'r v. Teasely*, 913 S.W.2d 175 (Tenn. Ct. App. 1995) was controlling on the issue. Pursuant to its reading of *Teasley*, the trial court would not admit evidence on the value of the property as appraised by Dr. Aguilar.

Without Dr. Aguilar's appraisal, Eller could not offer evidence that the compensation already paid by the City was insufficient. Accordingly, Eller proffered the remainder of its anticipated evidence, and the trial court entered a judgment. Eller appeals and raises two issues, as stated in its brief, for review:

> 1) Whether the trial court erred in excluding the testimony of Eller's designated expert witnesses on the issue of valuation.
> 2) Alternatively, whether *Teasley* is contrary to Tenn. Code Ann. § 29-16-114.

Because we agree that the trial court erred in excluding Eller's experts, we do not address Eller's second issue.

## Law and Analysis
## A. Expert Testimony

Tennessee Rules of Evidence 702 and 703 govern the admissibility of expert testimony. Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

*Id*. A trial court may consider five nonexclusive factors when determining the reliability of scientific testimony:

> (1) whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether...the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

*McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997). These factors may also be applied to nonscientific expert testimony. *State v. Stevens*, 78 S.W.3d 817, 836 (Tenn. 2002). In the case at bar, the trial court considered the *McDaniel* factors and did not find Dr. Aguilar to be unqualified or unreliable. Instead, the trial court found that *Teasley* simply prohibited his methodology. Accordingly, his appraisal was not relevant to the issue of value.

In condemnation cases, a trial court is allowed wide discretion when ruling on matters related to expert testimony. *State Dep't of Transp. v. Veglio*, 786 S.W.2d 944, 947-48 (Tenn. Ct. App. 1989). This discretion extends to expert testimony on the value of condemned land, but "an expert witness is not disqualified to testify merely because he may have used some criteria in arriving at his opinion which is not altogether the standard among appraisers." *State ex rel. Dep't of Transp. v. Brevard*, 545 S.W.2d 431, 436 (Tenn. Ct. App. 1976). Because the trial court has such wide discretion in this area, we review the trial court's decision on the admissibility of an expert's valuation testimony under an abuse of discretion standard. *Veglio*, 786 S.W.2d at 948.

The abuse of discretion standard requires us to consider "(1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). "While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative." *Id.*

In this case, the trial court's decision to exclude Dr. Aguilar's testimony rested entirely on its interpretation of *Teasley*. Therefore, we must determine if the trial court's application of *Teasley* was appropriate under the circumstances.

### B. Just Compensation and Value

The Constitution of the State of Tennessee provides "[t]hat no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn. Const. Art. 1, § 21. Payment of just compensation is not limited to fee simple owners; compensation is also owed to the owners of "a leasehold interest...when the underlying property is taken by eminent domain." *Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855, 858 (Tenn. Ct. App. 1996) (citing *Shelby County v. Barden*, 527 S.W.2d 124, 129 (Tenn. 1975). When the underlying property is taken, "[t]he lessee or tenant is entitled to any excess in value of his unexpired leasehold over and above the rentals which would be due for the unexpired term." *Barden*, 527 S.W.2d at 129. The issue, here, is not whether Eller's leasehold interest is compensable, but whether a certain method of determining the value of that interest is admissible as evidence.

The fair market value of the condemned land, estimated as if the owner were wiling to sell and the taker willing to buy, is the standard measure of just compensation. *Alloway v. City of Nashville*, 13 S.W. 123, 123 (Tenn. 1890). The trier of fact may determine value by considering "every element of usefulness and advantage in the property." *Id*. While the "speculative value of the property in the hands of the future owner could not be inquired into,...the value of its capabilities for a particular use belonged to the owner at the time of the taking, and these potential values should be considered, together with every other element of value, in ascertaining its then market price." *Southern Ry. Co. v. City of Memphis*, 148 S.W. 662, 669 (Tenn. 1912). *See also*, *Davidson Co. Bd.*

*of Educ. v. First American Bank*, 301 S.W.2d 905, 907 (Tenn. 1957) (reiterating the Tennessee rule that the value of a piece of property is "the value in view of all available uses"). In *State ex rel. Dep't of Transp. v. Brevard*, 545 S.W.2d 431 (Tenn. Ct. App. 1976), the court again described a wide range of factors affecting value:

> While the value to the owner may be enhanced by its special usefulness, benefit or profit to him, this is only one element for consideration. It must be remembered that the peculiar value of the property to the owner as presently used may not continue indefinitely since it may become necessary or desirable to change the use or sell the property, in which event its value for other uses and to other people would become a material factor for consideration.

*Id*. at 435. In the context of valuing a leasehold interest, the trier of fact "is generally entitled to consider any factor that might tend to enhance or reduce the leasehold's value...." *Outdoor West*, 947 S.W.2d at 858. While these decisions do not prescribe a specific rule governing the issue before us, they do reflect a general preference favoring the admission of evidence showing the value of condemned property.

We now turn to *Teasley*, the decision that the trial court found controlling. In *Teasley*, the State condemned a tract of land in Knox County, Tennessee. 913 S.W.2d at 176. Prior to the condemnation, the land owner leased the property to Eagle Advertising, Inc. ("Eagle"). *Id*. at 177. As lessee, Eagle erected a billboard on the property and rented space on the billboard to advertisers. *Id*. The lease agreement specifically anticipated that the State would condemn the property: "If the state buys the property that the sign is on, [Lessor] will have no liability with [Lessee]." *Id*. at 177. Upon condemnation, Eagle received compensation in the form of relocation expenses for its billboard. *Id*.

The Court, in *Teasley*, addressed whether Eagle was entitled to any additional compensation. First, the court found that Eagle's billboard was a trade fixture, rather than a fixture. *Id*. at 177. Because a trade fixture is personal property, Eagle's billboard was not compensable in eminent domain. *Id*. at 178. Accordingly, Eagle was only entitled to compensation for the cost of removing the billboard. *Id*. (citing Tenn. Code Ann. § §13-11-101--119.). Eagle could not receive additional compensation for its leasehold interest because it waived the right to receive such compensation in the lease itself. *Id*. at 179. Accordingly, the court did not address the value of Eagle's leasehold interest.

In order to determine if, or to what extent, *Teasley* controls, we must first examine the substance of Dr. Aguilar's testimony. The stated purpose of his appraisal was "to estimate the market value of the fee simple ownership of the sign structures located on leased property (a

leasehold)."[1] The appraisal distinguished between two methods of valuing billboards: market value and relocation benefits. Dr. Aguilar chose to follow the market value method because he was informed by Eller that the billboard structure could not be relocated in the market area. Dr. Aguilar contends that the market value method is more appropriate when relocation is impossible.

Following the market value method, Dr. Aguilar then considered three approaches to value: the cost approach, the income approach, and the sales comparison approach. Under the cost approach, Dr. Aguilar added the reproduction cost of the billboard structure to the leasehold bonus (difference between market rent and contract rent) to reach a market value of $136, 200. Under the income approach, Dr. Aguilar deducted Eller's operating expenses from the rent paid to Eller by advertisers to determine the net operating income for the site. Aguilar then multiplied this net operating income with a capitalization rate to reach a market value of $530, 400. Under the sales comparison approach, Aguilar compared Eller's property to similar properties that had recently been sold. He analyzed the revenue streams and purchase prices of three outdoor advertising sites–two in Jackson, Tennessee, the other in Memphis, Tennessee. After comparing these amounts with Eller's revenue stream, Aguilar found a market value of $594,600. Finally, Dr. Aguilar compared the values reached under the three methods, giving no weight to the cost approach and substantial weight to the income approach. His final estimate of the value of Eller's property was $556,000.

The trial court examined the appraisal, heard the testimony of Dr. Aguilar and found him to be both a knowledgeable and competent witness. The problem, the trial court determined, was that *Teasley* prohibits the use of Aguilar's methodology. Specifically, the trial court objected to Dr. Aguilar's characterization of the billboard structure and his use of income streams as a factor in determining market value. Although we are reluctant to interfere with the trial court's disposition of this evidentiary question, we find that the trial court erred in excluding Dr. Aguilar's appraisal and testimony.

After reviewing Dr. Aguilar's testimony, we find *Teasley* inapplicable. In *Tealsey*, the lessee owned a billboard structure but waived the right to receive compensation for its leasehold interest in the underlying property. *Id*. at 179. Here, the parties dispute whether Eller, like the lessee in *Teasley*, waived the right to receive compensation for its leasehold interest. This dispute may be critical to the resolution of this case, but it does not involve Dr. Aguilar's testimony. *Teasley* applies only when the value of a trade fixture, isolated from the value of any leasehold interest, is in question. Therefore, the trial court's application of *Teasley* to exclude Eller's expert proof was premature. By applying *Teasley* at this early stage, the trial court assumed, without deciding, that Eller waived the right to be compensated for its leasehold interest.

Our conclusion on this issue is supported by *Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855 (Tenn. Ct. App. 1996), a case decided only a year after *Teasley*. In *Outdoor West*, the

---

[1] Dr. Aguilar stated that he followed the methodology outlined in the Uniform Standards of Professional Appraisal Practice ("USPAP"). Tenn. Code Ann. § 62-39-329 requires appraisers in Tennessee to comply with the USPAP standards. The trial court did not find that Dr. Aguilar deviated from these standards in his appraisal.

court also considered a similar taking in eminent domain in which a lessee sought compensation for its leasehold interest and its personal property (another billboard). *Id*. at 856. At trial, the lessee presented expert proof on the fair market value of its leasehold interest. *Id*. at 857. Specifically, the appraisers considered the net income received by the lessee from the rental of the billboard, and then used the income figure to estimate the value of the interest in the remaining lease term. *Id*. The court focused its analysis on the admissibility of evidence relating to the duration of the lease, but implicitly recognized that the jury could hear proof from appraisers following the market value method. *Id*. at 858-59. The court concluded by emphasizing that "the weight to be given various contingencies that may affect the value of condemned property...fall[s] within the province of the jury." *Id*. at 859. Likewise, we find it appropriate for the jury to consider and evaluate the merits of Dr. Aguilar's appraisal.


We also find the City's focus on the classification of the billboard misplaced. In this condemnation, three property interests are relevant: Tanner's reversionary interest, Eller's leasehold interest, and Eller's billboard. The characterization of the billboard–whether personal property, fixture, or trade fixture–does not affect the validity of Eller's leasehold interest.[2] More importantly, the billboard's character does not change the general rule that leasehold interests are compensable in eminent domain. The City attempts to avoid this conundrum by arguing that Eller did not offer proof about the "bonus value" of the lease. The City's cramped definition of "bonus value," however, has no standing under Tennessee law. The City defines "bonus value" as the difference between the fair rental value of the property and the rent to be paid for the remaining term of the lease. Generally, Tennessee follows the same definition. *See State ex. rel Dep't of Transp. v. Gee*, 565 S.W.2d 498, 502 (Tenn. Ct. App. 1977). The City, however, seeks to narrow the meaning of "value" by arguing that Dr. Aguilar cannot present evidence on the value of the leasehold as used by Eller. This definition is contrary to the rule that "[t]he jury is generally entitled to consider any factor that might tend to enhance or reduce the leasehold's value." *Outdoor West*, 947 S.W.2d at 858. One factor for consideration is the usefulness of the property to the owner. *Brevard*, 545 S.W.2d at 435.

Finally, we reject the trial court's finding that Eller, through Dr. Aguilar's appraisal, is improperly seeking compensation for profits lost because of the condemnation. As a general rule, an owner of an interest in property cannot recover compensation in a condemnation proceeding simply by pointing to past or potential profits. *State v. Texaco, Inc.*, 354 S.W.2d 792, 798 (Tenn. Ct. App. 1961). However, a party can present evidence of profits generated by a property interest in order to show the value of that interest. *Id*.; *Outdoor West*, 947 S.W.2d at 857; *see also*, *Harco Drug, Inc. v. Notsla, Inc.*, 382 So.2d 1, 4 (Ala. 1980) ("While loss of business profits is not as such compensable in eminent domain proceedings, according to the general rule, income derived from

---

[2]We do not dispute the City's claim that billboards are classified as trade fixtures, and thus personal property, under Tennessee law. *See Burks v. Elevation Outdoor Adver.*, 220 S.W.3d 478, 486 (Tenn. Ct. App. 2006) ("[A] billboard constitutes a trade fixture, which retains its character as an item of personal property, and not a fixture to be considered a part of the real property on which it sits.").

a business on the condemned property is a factor which may be considered in arriving at the fair market value of the property."). Again, these cases do not dictate a specific method for determining the amount of compensation owed; they simply allow the trier of fact to consider a variety of factors and apply them as appropriate.

By permitting a jury to consider Dr. Aguilar's appraisal, we do not express an opinion on what effect his testimony should have. When applying the factors of *McDaniel* and Tennessee Rule of Evidence 702, a trial court does not weigh the conflicting views of the experts. *McDaniel*, 955 S.W.2d at 265. Instead, it is the duty of the trier of fact to evaluate these views "with the crucible of vigorous cross-examination and countervailing proof." *Id*. In the present case, for example, the City may challenge Dr. Aguilar's use of the "market value" method instead of the "relocation benefits" method. Dr. Aguilar applied the "market value" method, in part, because Eller informed him that the billboard could not be relocated. The trier of fact, however, may conclude that Eller can relocate the billboard, and thus disregard Dr. Aguilar's appraisal. Because essential facts like these remain in dispute, we decline the opportunity to require or forbid the use of a specific appraisal methodology in this or future cases. *See, e.g.*, *Nat'l Adver. Co. v. State, Dep't of Transp.*, 993 P.2d 62, 66-67 (Nev. 2000) (approving the income capitalization approach to determine the value of a leasehold interest when the billboard could not be relocated to a comparable site); *City of Scottsdale v. Eller Outdoor Adver. Co.*, 579 P.2d 590, 598 (Ariz. Ct. App. 1978) (finding the income approach improper when the billboard could be removed to a comparable site).

For the foregoing reasons, we find that the trial court erred by excluding Eller's expert testimony. Accordingly, the judgment is reversed, and the matter is remanded to the trial court. Costs of the appeal are assessed to Appellee, the City of Memphis.

_____
J. STEVEN STAFFORD, J.