IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
AUGUST 15, 2005 Session

# JOE W. KING, JR., ET AL. v. GENERAL MOTORS CORPORATION, ET AL.

### Direct Appeal from the Circuit Court for Maury County
No. 9481     Stella L. Hargrove, Judge

_____

### No. M2004-00616-COA-R3-CV - Filed December 22, 2005

_____

In this appeal, we are asked to determine whether (1) the jury based its awards of damages for lost earning capacity and future medical expenses on speculation; (2) the trial court erred when it denied the defendants' motion *in limine* to exclude the testimony of the plaintiffs' medical experts; and (3) the trial court erred when it denied an award of prejudgment interest to the plaintiffs. The defendants contend that there was no material evidence to support the jury's awards of lost earning capacity and future medical expenses and that the trial court should have granted their motion *in limine* because the court was required to exclude the testimony of plaintiffs' medical experts as a sanction for plaintiffs' failure to include those medical experts as experts in the plaintiffs' responses to interrogatories. With regards to prejudgment interest, the plaintiffs contend that the trial court erred when it refused to award prejudgment interest because this type of award is applicable to some awards from personal injury cases. We affirm in part, reverse in part, and remand for further proceedings.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Jonathan Cole, Nashville, TN, for Appellants

Philip L. Harris, Julie A. LaBunski, *pro hac vice*, Chicago, IL, for Appellants

Stephen C. Knight, Nashville, TN, for Appellees

# OPINION

## I. FACTS & PROCEDURAL HISTORY

On June 5, 2000, General Motors scheduled a test drive of six Saturn vehicles on the public roads of Maury County, Tennessee. As the convoy of Saturn vehicles approached a curve in the road, Mr. Joe W. King, Jr. ("King") approached the same curve traveling in the opposite direction in his automobile. Mr. Alfred Souilliere ("Souilliere"), one of the drivers of the Saturn vehicles, lost control of the vehicle while entering into the curve in the road and crossed into the opposite lane of traffic, striking King's automobile. Following the accident, King was transported to the hospital and treated for his injuries. As a result of the accident, King suffers from chronic pain syndrome caused by a brachial plexus injury, myofascial pain, and associated axial skeletal pain in his neck and back. King also suffers from post traumatic stress disorder.

On April 10, 2001, King and his wife, Mrs. Joanne King ("Wife," or collectively with King, "Plaintiffs" or "Appellees"), filed suit in the Circuit Court of Maury County against Souilliere, Saturn Corporation ("Saturn"), and General Motors Corporation ("GM," or collectively with Souilliere and Saturn, "Defendants" or "Appellants"), alleging that the actions of Souilliere, as agent for Saturn and GM, amounted to negligence per se, gross negligence, and/or recklessness and that Saturn and GM were liable on a theory of respondeat superior.

At trial, on the issue of damages, both sides presented expert testimony regarding loss of earning capacity. In addition, King presented expert deposition testimony of his doctors regarding the extent of his injuries and associated medical expenses. Defendants filed a motion *in limine* to exclude portions of the doctors' depositions. After a hearing on the motion, the circuit court stated that it was inclined to rule in favor of the Plaintiffs on this motion, however, the court reserved judgment to rule deposition by deposition as the proof was presented. The circuit court subsequently allowed the disputed deposition testimony to be presented as evidence to the jury.

At the conclusion of the trial, the jury found for Plaintiffs. The circuit court entered a judgment based on the jury's verdict, awarding Appellees the following damages to King: (1) $50,000 for past physical pain and suffering; (2) $50,000 for future pain and suffering; (3) $50,000 for past mental or emotional pain and suffering; (4) $50,000 for future mental or emotional pain and suffering; (5) $50,000 for loss of earning capacity; (6) $50,000 for future loss of capacity for enjoyment of life; (7) $75,171.72 for past medical care and services; (8) $225,000 for future medical care and services; and (9) $1,000,000 for lost earning capacity. The judgment also included an award to Wife for (1) $50,000 for loss of services and (2) $50,000 for loss of companionship, love, and affection. The jury also found Plaintiffs were not entitled to punitive damages. Defendants moved for judgment notwithstanding the verdict or, alternatively, for remittitur or new trial. The trial court denied Defendants' motion.

## II. ISSUES PRESENTED

Appellants have timely filed a notice of appeal and present the following issues for review:

1. Whether the circuit court erred when it admitted evidence of lost business profits as proof of lost earning capacity;
2. If lost business profits are inadmissible, whether there was material evidence to support the jury's finding of lost earning capacity;
3. Whether the circuit court erred by denying Appellants' motion *in limine* to limit the opinion testimony of Appellees' treating physicians; and
4. Whether the jury's verdict regarding future medical expenses was based upon speculation.

Appellees have presented the following additional issue for review:

5. Whether the circuit court erred when it denied prejudgment interest to Appellees.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## III. STANDARD OF REVIEW

This Court shall uphold a verdict from jury trial in a civil action that is approved by a trial court if there is any material evidence to support the verdict. Tenn. R. App. P. 13(d). "When addressing whether there is material evidence to support a verdict, an appellate court shall: (1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." **Barnes v. Goodyear Tire & Rubber Co.**, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978); *Black v. Quinn*, 646 S.W.2d 437, 439-40 (Tenn. Ct. App. 1982)). "Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies." **Id.** "Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury." **Crabtree Masonry Co.**, 575 S.W.2d at 5 (citing *City of Chattanooga v. Rogers*, 299 S.W.2d 660 (Tenn. 1956); *D. M. Rose & Co. v. Snyder*, 206 S.W.2d 897 (Tenn. 1947); *City of Chattanooga v. Ballew*, 354 S.W.2d 806 (Tenn. Ct. App. 1961); *Dynamic Motel Mgmt., Inc. v. Erwin*, 528 S.W.2d 819 (Tenn. Ct. App. 1975)).

## IV. DISCUSSION

### A. Admissibility of Lost Business Profits

On appeal, Appellants contend that the circuit court erred when it allowed evidence of lost business profits to show future lost earning capacity.

Generally, lost business profits may not be admitted to demonstrate future lost earning capacity in a personal injury action where the profits "depend for the most part upon the employment of capital, the labor of others, or similar variable factors." ***Dingus v. Cain***, 406 S.W.2d 169, 170-71 (Tenn. Ct. App. 1966) (citations omitted). However, "where the injured person is the sole operator . . . of the business, an injured person's services rather than the capital invested or labor of others is the predominate factor in producing the profits, evidence of diminution of profits could be received as a proper measure of his earning capacity." ***Id.*** at 171-72. "In cases of this character it must be shown that the business was personally conducted by the injured person with the profits depending entirely or substantially upon his individual labor and skill and are not derived from investment or labor of others." ***Id.*** at 172.

In addition, the proof adduced at trial must show that the lost profits are "directly attributable or a necessary consequence of [the injured person's] injury." ***Id.*** The proof must be "devoid of any element of speculation and shows all proper means taken to minimize loss" before an injured person may recover for future profits. ***Stewart v. Prechutko***, No. 86-246-II, 1987 Tenn. App. LEXIS 3041, at *3-4 (Tenn. Ct. App. Nov. 4, 1987) (citing *Maple Manor Hotel, Inc. v. Metro. Gov't of Nashville and Davidson County*, 543 S.W.2d 593 (Tenn. Ct. App. 1975)).

From the evidence adduced at trial, the lost business profits admitted into evidence stemmed from King's excavation of limestone and not from his expenditure of capital or the labor of others. King was a sole operator whose labor and skill almost entirely attributed to the profits of his limestone business.[1] According to Appellants, excavating limestone is "not rocket science." The excavation of limestone in this case, however, depended primarily upon King's labor and skill.

In order to recover for lost business profits as lost earning capacity, the proof of damages must not be speculative. ***Stewart***, 1987 Tenn. App. LEXIS 3041, at *3-4. Without a proven track record of profit, the injured individual must show contracts for the sale of his or her goods or services in order to recover for damages for lost business profits. ***See Burge Ice Machine Co. v. Strother***, 273 S.W.2d 479, 485-86 (Tenn. 1954); ***Gen. Constr. Contractors Ass'n, Inc. v. Greater St. Thomas Baptist Church***, 107 S.W.3d . 513, 525 (Tenn. Ct. App. 2002).

While King's limestone excavating business has been in existence for some time, the only profits made in this venture occurred during the year 2000. Before King operated the business as a sole operator, he employed labor to do so. During that time when he employed labor, King did not make any profits. King has attributed this lack of profit on his use of labor. Even assuming that running his business as a sole operator would be profitable, there is no evidence to support the conclusion that he could maintain that profitability in the future. King had no contracts for the sale of limestone. Additionally, King's main customer bought from other sellers of limestone. Given

---

[1] This Court does note that King had been in the limestone business for some time prior, and in that time, King has employed the labor of others to excavate the limestone. However, at the time of the accident, King was solely operating the excavating of his limestone.

-4-

the track record of King's business and the uncertainty of sales of limestone, any showing of lost business profits would be speculative and not admissible to show lost earning capacity.[2]

### B.    Material Evidence to Support Finding of Lost Earning Capacity

Appellants contend that, if lost business profits are not admissible to show lost earning capacity, the proof adduced at trial did not constitute material evidence to support the jury's finding of lost earning capacity.  Specifically, Appellants assert that the only evidence presented by Appellees to prove lost earning capacity was the expert testimony of Mr. James J. Breuss ("Breuss"), which should have been excluded at trial since it was based on speculation.

"Admissibility, qualifications, relevancy and competency of expert testimony are questions left to the trial judge and will not be disturbed unless there is a showing the decision is arbitrary or an abuse of discretion." **Pointer v. Tenn. Equity Capital Corp.**, No. M1999-01934-COA-R3-CV, 2001 Tenn. App. LEXIS 918, at *26-27 (Tenn. Ct. App. Dec. 18, 2001) (citing *McDaniel v. CSX Transport, Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997) (citing *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993)); *State v. Begley*, 956 S.W.2d 471, 475 (Tenn. 1997); *Tenn. ex rel. Dep't of Transp., Bureau of Highways v. Brevard*, 545 S.W.2d 431, 436-37 (Tenn. Ct. App. 1976)). "An expert's opinion cannot be based on speculation, but must be based on reliable data and relevant methods and processes." **Id.** at *28 (citing *McDaniel*, 955 S.W.2d at 265). "[W]hen calculating damages, expert conclusions cannot be grounded in speculation or guessing." **Id.** at *28-29 (citing *Cecil Corley Motor Co. v. Gen. Motors Corp.*, 380 F. Supp. 819, 854-55 (M.D. Tenn. 1974)).

At trial, Appellees presented the testimony of Breuss who testified as to King's lost earning capacity, basing his testimony on the prior earnings of King's limestone business from January 2000 until May 2000.  Using that profit margin and after speaking to King and King's two clients, Breuss determined what the lost business profits would be for the limestone pit.

As stated earlier, lost business profits may not be used in this case to show lost earning capacity because of their speculative nature.  Appellees have asserted that any error as to the admittance of lost business profits was cured by Appellants' use of the same information at trial.

---

[2] Appellees assert that, because Appellants' expert used similar evidence of lost business profits, any error in admitting lost business profits was cured.  However, as we elaborate later in this Opinion, there was no other credible evidence to support the full extent of the jury's award for lost earning capacity.  Further, after a review of the record, it affirmatively appears that this error affected the result of the trial.  Thus, the alleged error was not harmless. *See Johnson v. McCord*, 251 S.W.2d 144, 146 (Tenn. Ct. App. 1952) (citations omitted); *see also Inter-City Trucking Co. v. Mason Dixon Lines, Inc.*, 276 S.W.2d 488, 492 (Tenn. Ct. App. 1954) (finding that introducing similar incompetent evidence along with other credible evidence to support the jury's verdict rendered any error in originally admitting the incompetent evidence harmless).

In addition, Appellants have also asserted on appeal that the jury's verdict as to lost earning capacity was in error because it did not reduce the amount of lost business profits for King's responsibility to mitigate damages.  However, because we find that King may not show lost business profits due to their speculative nature, this issue is pretermitted.

Thus, we conclude that the circuit court abused its discretion when it admitted the testimony of Breuss because his testimony was based on that speculative evidence.

Appellees have asserted that, in addition to Breuss' testimony, Wife's testimony as to the future lost profits of King's carpenter business was material evidence to support the jury's verdict. However, taking her testimony as true, King's income as a carpenter was far less than the jury's award for lost earning capacity per year. Thus, this evidence cannot support the full extent of the jury's verdict. In such case, generally this Court would remit the verdict. *See Thrailkill v. Patterson*, No. 92A01-9201-CV-00021, 1992 Tenn. App. LEXIS 999, at *15 (Tenn. Ct. App. Dec. 17, 1992) (quoting *Pitts v. Exxon Corp.*, 596 S.W.2d 830, 833-34 (Tenn. 1980)). However, doing so in this case would substantially reduce the verdict, thus destroying it. *See Guess v. Maury,* 726 S.W.2d 906, 913 (Tenn. App. 1986). Accordingly, we reverse for a new trial to determine damages for lost earning capacity. *See id.* at 913 (finding that a grant of a new trial is appropriate where a substantial reduction in the jury's verdict would destroy it).

### C.    Appellants' Motion in Limine to Exclude Expert Testimony

Next, Appellants contend that the circuit court erred when it denied their motion *in limine* to exclude any deposition testimony by King's doctors or, in the alternative, any testimony by King's doctors that was not related to the care and treatment the doctor provided to King because the doctors were not named as experts in Appellees' answers to Appellants' interrogatories asking for the names and opinions of experts expected to be used at trial.

The Tennessee Rules of Civil Procedure do not specify a sanction that may be imposed on a party who fails to identify expert witnesses in his or her answers to interrogatories. *See Buckner v. Hassell*, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000). However, our supreme court has found that "the inherent power of trial judges permits the trial judge to take appropriate corrective action against a party for discovery abuse." *Lyle v. Exxon Co.*, 746 S.W.2d 694, 699 (Tenn. 1988) (citing *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981)). When a trial court determines the sanction to be imposed, it "should consider the explanation given for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance." *Strickland*, 618 S.W.2d at 501.

We review a trial court's sanction for abuse of discovery process under an abuse of discretion standard. *Lyle*, 746 S.W.2d at 699 (citing *Brooks v. United Uniform Co.*, 682 S.W.2d 913 (Tenn. 1984)). Thus, "[t]he question before this Court is . . . whether 'the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of evidence.'" *Buckner*, 44 S.W.3d at 83 (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). This Court "should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness." *White*, 21 S.W.3d at 223 (citing *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

After reviewing the evidence, we cannot say that the circuit court abused its discretion when it allowed the deposition expert testimony of King's treating physicians at trial. In their response to Appellants' motion *in limine*, Appellees set forth numerous reasons why they failed to name their expert witnesses. Additionally, these experts were crucial to Appellees' case to show what injuries King suffered and the damages associated with those injuries. Further, Appellants could not demonstrate that they were prejudiced or surprised by the non-disclosure. The circuit court found that Appellees had substantially complied with the discovery process. Under these facts, reasonable judicial minds could differ as to the soundness of the circuit court's decision not to sanction Appellees. Accordingly, we affirm the decision of the trial court as to this issue.

### D.     Future Medical Expenses

Finally, Appellants contend that the jury's verdict regarding future medical expenses should be set aside because there was no material evidence to support the verdict. Specifically, Appellants contend that the jury based its verdict on speculation.

In a personal injury case, damage awards for prospective medical expenses may be awarded when the effects of the injury will require the injured person additional medical treatment. ***Henley v. Amacher***, No. M1999-02799-COA-R3-CV, 2002 Tenn. App. LEXIS 72, at *45 (Tenn. Ct. App. Jan. 28, 2002) (citing *Reed v. Wimmer*, 465 S.E.2d 199, 210 (W. Va. 1995)). However, damages for future medical expenses may not be awarded when the damages are based on speculation or conjecture. ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) (citing *Western Sizzlin, Inc. v. Harris*, 741 S.W.2d 334, 335-36 (Tenn. Ct. App. 1987); *Nashland Assocs. v. Shumate*, 730 S.W.2d 332, 334 (Tenn. Ct. App. 1987)). "To remove awards for future medical expenses from the realm of speculation, persons seeking future medical expenses must present evidence (1) that additional medical treatment is reasonably certain to be required in the future and (2) that will enable the trier-or-fact [sic] to reasonably estimate the cost of the expected treatment." ***Henley***, 2002 Tenn. App. LEXIS 72, at * 45 (citing *Myers v. Hearth Techs., Inc.*, 621 N.W.2d 787, 793 (Minn. Ct. App. 2001)).

Thus, Appellees must prove that King will, more probably than not, need medical services for his injuries incurred from the accident in the future. Further, "the trier-of-fact must have some factual basis for reasonably estimating the cost of the future medical expenses." ***Id.*** at *48 (citations omitted). Appellees need not present precise evidence regarding the costs. ***Id.*** at *49 (citing *Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. Ct. 1997); *Jordan v. Bero*, 210 S.E.2d 618, 637 (W. Va. 1974)). Rather, "[i]f there is evidence in the record which, together with reasonable inferences to be drawn from that evidence, provides the jury with a basis to make a fair and reasonable estimate as to the amount of damage, that is sufficient." ***Palmer v. Norfolk-Southern Ry. Co.***, No. 03A01-9309-CV-00313, 1994 Tenn. App. LEXIS 162, at *9 (Tenn. Ct. App. Mar. 30, 1994) (citing *Lee Shops, Inc. v. Schatten-Cypress Co.*, 350 F.2d 12, 18 (6th Cir. 1965); *Coverdell v. Mid-South Farm Equip. Ass'n*, 335 F.2d 9, 14 (6th Cir. 1964)).

At trial, Appellees presented the deposition testimony of Benjamin W. Johnson, Jr., M.D., Rodney A. Poling, M.D., and Jimmy V. Wolfe, M.D. In each of their testimonies, each doctor stated to a reasonable degree of medical certainty that King would require medical treatment for the rest of his life because of the injuries he incurred from the accident. Further, each doctor stated that the previous year's medical expenses would be a reasonable estimate of the costs King would incur per year as a result of the accident. In addition, Appellees presented all of King's medical bills incurred as a result of the accident. The parties have also stipulated as to the amount of medication expense King will incur per year in addition to his medical treatment expenses. Taking this evidence as true and as a whole, we cannot say that this evidence can support the full extent of the jury's award for future medical expenses. Generally, the proper remedy would be for this Court to remit the verdict. *See Thrailkill v. Patterson*, No. 92A01-9201-CV-00021, 1992 Tenn. App. LEXIS 999, at *15 (Tenn. Ct. App. Dec. 17, 1992) (quoting *Pitts v. Exxon Corp.*, 596 S.W.2d 830, 833-34 (Tenn. 1980)). However, doing so would substantially reduce the verdict, which would destroy the jury's verdict. *See Guess v. Maury,* 726 S.W.2d 906, 913 (Tenn. App. 1986). Accordingly, we reverse for a new trial to determine damages for future medical expenses. *See id.* at 913 (finding that a grant of a new trial is appropriate where a substantial reduction in the jury's verdict would destroy it).

### E.    Prejudgment Interest

Appellees have asserted on appeal that the circuit court erred when it denied Appellees' request for an award of prejudgment interest. While Tennessee law permits the award of prejudgment interest in certain instances, *see* Tenn. Code Ann. § 47-4-123 (2005), an award of prejudgment interest in a personal injury action by negligence is not allowed, *McKinley v. Simha*, No. W2001-02647-COA-R3-CV, 2002 Tenn. App. LEXIS 941, at *63-65 (Tenn. Ct. App. Dec. 31, 2002) (no perm. app. filed) (citing *Louisville & N.R. Co. v. Wallace*, 17 S.W. 882, 882-83 (Tenn. 1891)); *see also Hollis v. Doerflinger*, 137 S.W.3d 625, 630 (Tenn. Ct. App. 2003). Accordingly, we affirm the decision of the circuit court as to this issue.

### V.   CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the decision of the circuit court. We remand for further proceedings. Costs of this appeal are taxed one-half to Appellants, Alfred Souilliere, General Motors Corporation, Saturn Corporation, and their surety and one-half to Appellees, Joe W. King, Jr. and Joanne King, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE